BATCHELDER (Case No. 1,098)  [2 Fed. Cas. page 1012]

BASSETT, (UNITED STATES v.)  See Cases Nos. 14,538 and 14,539.

[1 Cranch, C. C. 124.][1]

Circuit Court, District of Columbia. June Term, 1803.

BASTABLE, (WILSON v.)  See Cases Nos. 17,788 and 17,789.

BASYE, (VEITCH v.)  See Case No. 16,909.

[1] [Reported by Hon. William Cranch, Chief Judge.]

## Case No. 1,098.
### In re BATCHELDER.

[1 Lowell, 373;[1] 3 N. B. R. 150, (Quarto, 37.)]

District Court, D. Massachusetts. July Term, 1869.

BANKRUPTCY—TRANSFER BY INSOLVENT —PREFERENCE — ASSIGNMENT UNDER DURESS — PROPER BOOKS OF ACCOUNT.

1. Where a trader transferred his whole stock and book accounts to one creditor, about three weeks before filing his petition, and had no other property, but owed many debts; *held*, a preference unless explained.

[Cited in Re Seeley, Case No. 12,628.]

2. It is no valid excuse for such an assignment, that it was made under threat of legal process.

[Cited in Strain v. Gourdin, Case No. 13,-521.]

[See Rison v. Knapp, Case No. 11,861; Traders' Bank v. Campbell, 14 Wall. (81 U. S.) 87; Clarion Bank v. Jones, 21 Wall. (88 U. S.) 325; In re Jackson Iron Manuf'g Co., Case No. 7,153.]

3. If the necessary effect of an act is to prefer one creditor, the intent to prefer is presumed, though other motives may have co-operated to induce the act.

[4. The discharge of a bankrupt trader should not be refused for failure to keep proper books of account, when the books themselves are not produced, and parol statements regarding them are vague and inconclusive. The evidence as to the improper conditions of the books, and their bearing on the debtor's business, should be complete.]

[Cited in Re Frey, 9 Fed. 380.]

In bankruptcy. The examination of the bankrupt [Charles W. Batchelder] disclosed that about three weeks before he filed his petition, he assigned and transferred his whole stock in trade and book accounts to his father, in satisfaction of a pre-existing debt. He had no other estate or property, excepting such as is exempted from the operation of the bankrupt law, and he owed a considerable amount of debts, and was in fact insolvent. It appeared that his father came to his place of business with a sheriff's officer, and threatened to attach his stock and break up his business unless he made the conveyance, and it was under this pressure that the assignment was made. [Discharge refused.]

J. L. Colby, for opposing creditors.
W. H. Towne, for bankrupt.

LOWELL, District Judge. It is argued that this act was not a preference, because it was not voluntary. I have considered this question more than once, and am fully satisfied with my former decisions, that under the bankrupt act such a payment does not lose its character of a preference by being made under pressure. The English courts worked out the doctrine of preference from a consideration of the equities of the subject-matter. The word itself was not found in their stat-

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

utes, but they held that the intent of the law being to distribute the assets equally among all the creditors, no unjust advantage ought to be given to any one creditor. But under their earlier statutes, [at the time this subject was given its legal shape,][2] the title of the assignee related back to the act of bankruptcy, and in declaring a trader to be bankrupt by reason of a preference, they indirectly deprived, or tended to deprive, the preferred creditor of his title, and that without hearing him. It became necessary, therefore, to be very cautious not to create acts of bankruptcy which might prejudice honest creditors. A creditor has a right to demand and receive payment of his debt, they said; and from this starting-point they arrived at the rule that a payment made in pursuance of a lawful demand, should not be considered a fraud on the act. See In re Waite, [Case No. 17,044.]

But they never carried this doctrine to the extent of saying that a creditor might lawfully take an assignment of all the property of a trader. On the contrary, that was always and conclusively an act of bankruptcy, from which even pressure could not free it, because it must have been obvious to the creditor at the time that if he got the whole, no one else could get any thing. Accordingly the English law has two conclusive presumptions. One is that a trader who conveys his whole property to a pre-existing creditor, must have contemplated a preference of that creditor; and the other, that a debtor who pays an honest debt, with a part only of his assets, does not intend any [technical][3] fraud, [which should render the payment void,][3] if the payment was in consequence of the threats or demands of the creditor.

Our law adopts neither of these presumptions as conclusive. It defines a preference in the statute itself; or rather it has language which is inconsistent with the English definition. It makes the intent to prefer, or give an advantage to one creditor, the important thing; and this may evidently concur with pressure on the part of the creditor. For instance, in the leading case of Denny v. Dana, 2 Cush. 172, which is more important in construing our statute than the English decisions are, because the statutes are more alike, pressure was not allowed to avail in answer to a manifest preference. The doctrine of that case has been followed in many decisions under the bankrupt act, and denied, so far as I know, in none.

It must be remembered that by our law the assignee's title dates only from the filing of the petition, and that the bankrupt may be guilty of a preference which will subject him to the act, without involving the preferred creditor, unless the latter had reason to know or suspect the illegal intent. On the other hand, the fact that the con-

veyance was of all the property will not perhaps in all cases conclusively show a preference. It is a very important circumstance, and almost decisive, but the presumption is still one of fact, and the question in every case is whether a preference was intended. It would be very difficult to explain so suspicious a fact, but I am not ready to say that there may not arise a case in which it could be explained.

No explanation is made in this case, and the discharge is refused.

[The other objection is overruled. It is not right to condemn a trader for not keeping proper books of account without full evidence of the facts, and of their bearing upon the business of the debtor. The books themselves are not produced, and the parol statements are vague and inconclusive. The case, on this head, is not made out.][4]

NOTE, [from 3 N. B. R. 151, (Quarto, 37.)] See Wilson v. City Bank of St. Paul, [17 Wall. (84 U. S.) 473,] requiring intent to prefer to be shown.